Majority Eeport.
In Assembly, March 10th, 1858.
Mr. Crane, from the majority of the committee on privileges and elections, to 'which was referred the petition of Sidney II. Cook, claiming to be entitled to the seat in the House now occupied.by the Hon. James Erazee, reported in writing, as follows:
*301 B-EEORT FROM THE MAJORITY OE THE COMMITTEE ON PRIVILEGES AND Elections, relative to the seat now occupied by the Hon. J ames Erazee.
Mr. Crain, from the committee on privileges and elections, to which was referred the' petition of Sydney H.' Cook, claiming the seat in -the House now occupied by the Hon. James Frazee, beg leave, on behalf of the majority of said committee, to submit the following report:
The committee have entered upon this investigation with'a desire to determine impartially the claims of the contestants, and without any hesitation arising from doubt as to their power in the premises, to fully impress the House with a conviction of their undoubted constitutional power to take up the case, investigate all the facts, irrespective of returns and certificates of the official canvass. The committee invite the attention of the House to -section ten of the third article of the Constitution, which provides that “ each House shall determine the rules of its own proceedings, and be the-judge of the election returns and qualifications of its own members.” This provision invests the House with full power over the subject, and authorizes it to go back of returns and certificates, and investigate “ the election ” of its members. It is a power granted by the supreme law of the State, and rises above all official certificates and returns, and could not be subverted even by a statute law. If further authority is needed, the committee would also invite the attention of the House to an adjudication, where the power of the Assembly and of the court tribunals to go back of certificates and returns of canvassers is discussed. In the case of Benton v. Tail, reported in the 20th Wendell, page 16, the court says: “But to hold it (the official canvass) conclusive in this proceeding, would be nothing less than saying that the will of the electors, plainly, expressed in the forms prescribed by law, may be utterly defeated by the negligence, mistake or fraud of those who are appointed'to register the results of an election. But if we cannot look beyond the certificate for purposes of correcting an error produced by negligence or mistake, we cannot interfere in a case of fraudulent misconduct on the part of the board of canvassers; In those legislative bodies which have the power to judge of their own members; it is a settled practice, when the right of a sitting member is called in question, to look beyond the certificate of the returning officers ; and I think a court and jury, with better means of arriving at truth, may pursue the same course.”
*302 It appears from the certificate of the board of county canvassers, given in evidence before the committee, that from the returns of' the election district inspectors for the first Assembly district of the county, of Onondaga, certified to said board, that Sidney H. Cook, the contestant, received at the election held on the 3d day of November last, one thousand nine hundred and nineteen votes, and James Erazee one thousand nine hundred and twenty votes; from which, it will be seen that the present incumbent was declared elected by one majority. The contestant claims that he actually received ballots which were not allowed him by the district inspectors in the canvass ; that ballots legally and fairly cast for him, were destroyed and not counted, and that illegal ballots cast for Erazee, the present incumbent, were allowed to said Erazee in the canvass. The first irregularity of this kind brought to the notice of the committee, is alleged to have occurred in the first election district of the town of Spafford. It is proved to the satisfaction of the committee, by the testimony of John L. Mason, Daniel Wallis and IT. Linus Darling, that during the canvass of the Assembly votes in this election district, Isaac Harris, one of the inspectors, found among the ballots which had been taken from the Assembly box, two double ballots for James Erazee for Assembly, which were separated and counted for said Erazee; that the ballots for Assemblyman exceeded the poll list by two in number; and that upon his mentioning the fact of having found the duplicated ballots to the other inspectors, the whole of the Assembly ballots, (including the double ballots,) were thrown back into the box, and two ballots for Sidney IT. Cook for member of Assembly, were drawn out and destroyed. It seems that the ballots unopened had been twice or three times carefully counted, and compared with the poll list, and found to agree; and that on three several counts, the duplicated ballots had not been detected. The duplicated ballots were found by Harris on opening and counting the ballots. .
The evidence is contradictory as to whether Harris called the attention of the board to the fact of the duplicated ballots, at the time he discovered them. But it is clear that the board took no action upon the subject until after a count was made of the opened ballots, and there was found to be an excess of votes over the poll list. This excess was found to be two over the poll list, and was found in the pile of which Harris had charge.
The statute upon the subject is as follows: (Section thirty-seven, of *303 article four, of the act entitled “An act respecting elections, other than for militia and town' officers,” passed April 5th, 1842.) “Each box being opened, the ballots contained therein shall be taken out and counted unopened, except so far as to ascertain that each ballot is single, and if two or more ballots shall be found so folded together as to present the appearance of a single ballot, they shall be destroyed, if the whole number of ballots exceed the whole number of votes, and not otherwise.”
The question now arises, ought the inspectors to have destroyed these joint or double ballots, under the preceding section of the statute % The committee are clearly of the opinion that they should have done so. The committee are of opinion that this statute requires the destruction of all double ballots found in the box, either upon a count of opened or unopened ballots, where it is found that the number of ballots exceeds the number called for by the poll list. It is broad and general in its provisions, and confined to no specific count. To make a ballot illegal under this section, so as to make it incumbent upon the inspectors to destroy it, it is only necessary, in the language of the statute, 1st, “ That two or more ballots should be found so folded together as to present the appearance of a single ballotand 2d, “ That the whole number of ballots exceed the whole number of votes on the poll list.” That these double ballots presented the appearance of single ballots is clearly established by the fact that they had been subjected to two or three careful counts unopened, in'order, in the language of the statute, “ to ascertain that each ballot is single,” and had eluded the vigilance of the inspectors. Another fact is undisputed, that the counting of these joint ballots produced the excess of votes over the poll list. When these facts are established in a given case, the statute is peremptory, “ they (the ballots) shall be destroyed.”
It was argued before the committee, by counsel for Mr. Frazee,that it does not clearly appear, from the evidence, that ITarris called the attention of the other inspectors to the double ballots, until after they were mingled with the common pile, and that the board could not legally reject those ballots after they had b,een so mingled. The committee are of the opinion that the transaction was just as illegal as though the whole board had been cognizant of the fact, and the double ballots been eouiited by their direction. ,
It- is well known that it is customary in the canvass of votes for each inspector to count a certain portion of ballots separately, *304 and often the clerks participate in the count as a matter of convenience. It is undoubtedly the duty of an officer, when discovering a double ballot, to lay it aside, to be disposed of upon a comparison of the ballots with the poll list,- so that if an excess be found over the poll list it can be destroyed; and it is undoubtedly the further duty of an officer, on discovering such a ballot, to call the attention of the board to the fact at the time of the discovery. His omission, however, to lay aside the ballot, or-call the attention of the board to it at the time it is discovered to be a double ballot, does not legalize the ballot. The doctrine cannot be entertained that because the inspector has concealed the fact of having found a double ballot, that a candidate can thereby be subjected to the hazard of a draw. If the board in this case had had knowledge of the double ballots found by Harris, and decided to count them for Frazee, it would have been a palpable violation of the statute above quoted.
Is it any the less a violation of the statute that it was done by a single inspector ? If so, each inspector in opening ballots may discover double ballots and conceal them, so as to produce an excess of ballots.over the poll list, and subject the candidate to the hazard of a draw. The committee believe, in this case, that the conduct of Harris was illegal; and while they do not feel called upon to impute to him any intentional wrong, it is clear he was guilty of a neglect of duty and a violation of the statute. The section of the statute under which the inspectors proceeded to draw in this case, is as follows:
“ Section 41. If, after having opened or canvassed the ballots, it should be found that the whole number of them exceeds the whole number of votes entered on the poll lists, the inspectors shall return all the ballots into the box, and shall thoroughly mingle the same; and one of the inspectors, to be designated by the board, shall publicly draw out of such box, without seeing the ballots contained therein, so many of such ballots as shall be equal to the excess, which shall be forthwith destroyed.”
The committee believe that this statute has no application to an excess produced by duplicated ballots, but applies to a mistake in the count of unopened ballots, or in the manner of keeping or footing up the poll list. If the duplicated ballots for Frazee had been destroyed, the number of .votes Frazee received would have been four less than was accorded to him by the inspectors. liestoring to the contestant Cook the two ballots drawn out and destroyed, would have increased' *305 his aggregate vote two more than was allowed him by the inspectors, making a difference of six in the canvass, and electing the contestant by five majority.
The second alleged irregularity investigated by the committee was in the second election district in the town of. Camillus. It is clearly proven that in this district, in the opening of the Assembly ballots, a joint ballot was found for Cook. The attention of the board was called to this double ballot at the time it was discovered. The double ballot was separated and mingled in the general pile of ballots and counted. On comparing the whole number of ballots with the poll list, there was found to be-an excess of one. The board, after mixing the ballots, took out promiscuously from the pile of Cook’s ballots two ballots and threw them away, not counting them. The board intended to do, by this act, what was equivalent to a destruction of joint ballots, under section thirty-seven of the statute hereinbefore quoted. This act the committee believe to have been irregular and illegal. Under the statute the board should have destroyed the identical joint ballot. The joint ballot was by the statute illegal and void, and although undestroyed, it would be the duty of the inspectors to reject it in the count, and to restore to Cook the two ballots thrown away. From this it will appear that no wrong was done to Cook by this irregularity on the part of the inspectors. After the destruction of the two ballots for Cook, it was found upon a count that the number of the ballots fell short one of the number called for by the poll list. There was at this poll found in the school commissioner’s box a ballot for Cook for Assemblyman, regularly indorsed, and in all respects a perfect ballot. This ballot was not allowed to Cook. The committee believe it to have been the duty of the inspectors to allow this ballot to Cook, under the following section of the statute:
“ Section 38. No ballot properly indorsed, found in a box different from that designated by its indorsement, shall be rejected, but shall be counted in the same manner as if found in the box designated by such indorsement, provided that by the counting of such ballot or ballots it shall not produce an excess of votes over the number of voters as designated on the poll list.”
Allowing this vote to Cook would have produced* a tie in the election, and Frazefe not having obtained a majority of all the Assembly votes in that Assembly district, would not have been entitled to a seat in this House.
The next irregularity brought to the attention of the committee is *306 alleged to have occurred in the first election district of the town of Camillus. Upon canvassing the votes in the judiciary box at this poll it was found that the number of votes contained in that box corresponded with the number called for by the poll list. The inspectors on counting the opened ballots found two Assembly votes for Sidney EL Cook regularly indorsed. By direction of the board, these votes were placed under a candlestick or lamp used by the inspectors. The Assembly votes were next canvassed, and upon several careful counts of unopened ballots, it was found that the number of ballots corresponded with the number called for by the poll list. But on counting the opened Assembly ballots two judiciary ballots regularly indorsed were found in the pile of Assembly ballots, and these two ballots were likewise placed under a lamp or candlestick. The two judiciary ballots thus found were subsequently, as is shown by the evidence, taken from under the candlestick or lamp and counted with the judiciary votes, which made the number of judiciary ballots correspond with the number called for by the poll list. This was in strict conformity with the requirements of the 38th section of the statute hereinbefore quoted. When the two judiciary ballots found in the Assembly box were taken from the pile of Assembly ballots and counted where they belonged, the Assembly ballots lacked two of the number called for by the poll list, and the law required that the two Assembly votes found as aforesaid in the judiciary box should be counted with the other Assembly votes, and allowed to the contestant Cook. But in the opinion of the committee the proof is irresistable that the inspectors did not count these votes, and they were never allowed for Cook, but were destroyed. The testimony of the inspectors and other persons as to the disposition made of these two Assembly votes is to some extent vague and contradictory, no very distinct recollection as to this point having been retained in the minds of the witnesses. But, in the opinion of the committee, the fact that these votes were never counted or. allowed to the contestants, but were destroyed, is established beyond all doubt by records constituting a higher order of evidence than the mere recollection or impressions of witnesses. The written returns of the inspectors to the board of canvassers show that only two hundred and sixty-eight votes were returned for Assemblyman, while the poll list called for two hundred and seventy. Elad the two Assembly ballots found in the judiciary box been counted, the return of the inspectors must necessarily have shown *307 two hundred and seventy votes. The committee respectfully submit that it is impossible in their opinion to reconcile this discrepancy between the returns and the poll list with the idea that these two Assembly votes were ever counted. Had the inspectors performed their duty and counted these votes a^ by law they were required to do, the contestant Cook would have been elected by a majority of one, independently of the irregularities in the two election districts herein-before mentioned.
The committee are therefore of opinion and state as the result of their investigations :
First. That the contestant Sidney H. Cook, was by illegal acts of the inspectors in the first election district of the town of Spaf-ford deprived of two votes cast for him in that district and to which he was legally entitled; and that four votes were allowed to James Frazee in that district to which said Frazee was not entitled.
Second. That by the illegal conduct of the inspectors in the second election district of the town of Camillus, one ballot for the contestant Sidney H. Cook, was rejected which should have been counted and allowed to said Cook.
Third. That two Assembly ballots in due form of law cast for Sidney H. Cook in the first election district of the town of Camillas, and to which he was legally entitled were, by mistake, overlooked by the inspectors and not counted; and that the said two ballots shoulfl have been allowed to the contestant,
Fourth. That Sidney H. Cook was duly elected member of Assembly from the first Assembly district, of the county of Onondaga, at the election held on the 3d day of November, 1857, by a majority of eight votes.
The committee beg leave to accompany this report with the testimony taken before them and to submit' to the House the following resolutions:
Resolved, That James Frazee is not entitled to a seat as member of Assembly now occupied by him.
Resolved, That Sidney H. Cook is entitled to the seat as member of Assembly now occupied by James Frazee.
See testimony accompanying said report, pages 9 to 30.
Assembly Documents, 1858, No. 71; Assembly Journal, 1858, page 464.
*308 MinoRity Report.
In Assembly, March 10, 1858.
Mr. Mather, from the minority of the committee on privileges and elections, to which was referred the petition of Sidney H. Oook, contesting the right of James Erazee to a seat in this House, as a member of Assembly from the first Assembly district of Onondaga county, and claiming that right for himself, reported, in writing, adversely to the prayer of said petitioner:
Report erom the Minority oe the Committee on Privileges and Elections relative to the Seat now occupied by the Hon. James Erazee.
Mr. Mather, from the minority of the committee on privileges and elections, to which was referred the petition of Sidney H. Cook, claiming the seat in the Assembly occupied by the Hon. James Fra-zee, of the first Assembly district of the county of Onondaga, makes the following report:
That at the last general election, held in and for the first Assembly district of the county of Onondaga, the said James Erazee and the said Sidney H. Oook were opposing candidates for the office of Assemblyman in said district. That the petitioner claims that the inspectors of election in the first election district of the town of Spafford,. and in the second election district of the town of Camillus, also in the first election district of the town of Camillus, committed errors and irregularities in the canvass of the Assembly votes in each of these districts.
The proofs submitted to the committee on behalf of. the claimant consists of evidence taken before the county judge of the county of Onondaga, in pursuance of the provisions of the statute in such case provided, and a certificate of the clerk of the county of Onondaga, showing that the whole number of votes given in the first Assembly district were three thousand eight hundred and fifty-seven ; of which James Erazee received one thousand nine hundred and twenty, Sidney H. Oook one thousand nine hundred and nineteen, Sam fourteen, Blank one, and Mr. Eastman three. Also, certificate of town clerk of the town of Camillus, showing that the whole number of votes given for Assembly in the first election district were two hundred and sixty-eight, of which Mr. Oook received one hundred and seventy and Mr. Erazee ninety-eight. Also showing that the whole number of votes given in the second -election district of said town *309 were two hundred, and thirty-one, of which Mr. Cook received one hundred and thirty-three, Mr. Frazee ninety-seven, and Blank one.
The evidence on the part of Mr. Frazee consists of testimony of Mr. John J. Blioades, C. B. "Wheeler, James Monroe, David Allen Munroe, Isaac Harris, and Samuel H. Stanton, taken before your committee ; also, certificate of the clerk of the county of Onondaga, showing that he is entitled to the seat occupied by him as member of Assembly for said district.
The testimony in relation to the. proceedings of the board of inspectors in the first election district of the town of Spafford, consists of the affidavits of two of the inspectors, one of the clerks, and a bystander, and the evidence of two of the inspectors taken before your committee. No question is raised as to the proceedings in the canvass of the votes until the count for member of Assembly. The Assembly box was emptied upon the table, and the votes counted unopened. Upon the first count the number of votes did not agree with the poll list. The votes were then counted unopened a second and third time, and each time were found to agree with the poll list. On counting the second time, Harris found two votes which he counted as one the first time. The three inspectors and two clerks then proceeded to open the votes and place the tickets for each candidate in a pile by itself.
They then counted and declared off the number of votes thus opened and placed in the separate piles, and it was found that the aggregate number of votes when opened exceeded the number on the poll list by two votes. When it was found out that there was an excess, Mr. Harris, one of the inspectors, after-he had opened the ballots and placed them in the pile, and declared them off, called the attention of the inspectors to the fact that he had opened a ballot which he thought had the apearance of being folded together. The other inspectors did not see the ballot which Harris stated he thought had the appearance of being folded.
The» inspectors then examined the law, and found that when there was an excess of votes after they had been opened, they must be put back into the box, and shaken up, and the excess drawn out. The votes were placed in the box by Mr. Mason, one of the inspectors, and Mr. Stanton, who was also an inspector, drew out two votes, which were destroyed. The votes thus drawn out were for Mr. Cook. The evidence of Mr. Harris, and Mr. Wallace, who was a bystander, shows that the supposed folded votes were for Mr. Frazee.
*310 The other inspectors had no knowledge upon the subject, for the reason that their attention was not called to the subject until after the said supposed folded vote had been opened and placed in the pile and counted. The evidence of Mr. Harris, taken before your committee, shows that the votes which he supposed were double, had only slipped together; that they were not folded. And the evidence of Mr. Stanton shows that he found two or three votes thus slipped together, and that it is a common occurrence. The evidence also shows that the ballots overrun the poll list in two other boxes. These are all the facts in relation to this canvass. Tour committee are of the opinion that the canvass was properly and fairly conducted, and that the board performed their duty with honesty and integrity. If there was any fault, it lay with the individual inspector in not announcing the presence of a double ballot at once, upon the detection of such ballot j but the action of the board was in accordance with the strict letter of law. It would be a dangerous and unauthorized precedent to overhaul the count after the votes had been opened and counted, upon the suggestion of one of the inspectors that he had neglected his duty in omitting to exhibit a double ballot to the board. The law requires an inspection by the board of the ballot which is brought in question. The board cannot act upon the statement of one of the inspectors after the ballots have been open and counted, nor will the Legislature in such a case. Such practice would enable one of the inspectors to defraud the others, and give to one the privilege and right of deciding a question which the law has wisely committed to the whole board of inspectors.
Eor these reasons your committee are of the opinion that no error was committed in the canvass of the votes in the said election district.
The next error alleged to have been committed is in the canvass of the votes in the second election district in the town of Oamillus.
The evidence taken by the claimant consists of the testimony of two inspectors and one of the clerks of the poll. Erom this evidence it appears that upon counting the ballots in the Assembly box, unopened, they were found to agree with the' poll list. The inspectors then commenced opening the ballots. In opening the ballots, ’William Eeker, one of the inspectors, announced to the board that he had .found what appeared to be a double ballot, and the board, after inspecting the ballot and reading the law, decided, by a unanimous vote, that it was a double ballot, and rejected it. The double ballot *311 was for Cook. There was one blank ballot found in the Assembly box witli the name of candidate erased. The poll list had two hundred and thirty-three names upon it. .By counting the folded ballot as two votes and the blank ballot, there was an excess of one" vote.
In canvassing one of the other boxes, a vote for Assembly was found, but the same was not-counted, for the reason that the list for Assembly was full without counting it. The board did not finally destroy the double ballot until they had counted the votes over two or three times, and ascertained, if it was counted as two votes, there would be an excess of one vote. Instead of throwing away the identical ballot, two eqrdvalent ballots for Mr. Cook were thrown away. This was, at least, a mere matter of ceremony, as by the rejectionrof the votes by the unanimous decision of the board, the same result had already been produced.
In the opinion of your committee the folded ballots were properly and legally rejected. After the announcement no further business was done until the decision of the board to reject the double ballot. The subsequent counting was a matter of prudence and caution, carefully exercised to ascertain if, by accident, the two ballots might not have slipped together. The stray vote for Assembly, found in another box, could' not have been counted without creating an excess of votes in the Assembly box. There was no error committed by the board of inspectors; on the contrary, the provisions of the statute were strictly complied with, and the double ballot could not have been counted for Mr. Cook without a direct, open and palpable violation of the election laws by the, inspectors.
The last error, of which the complainant complains, consists in an alleged irregularity in the .first election district of the town of Camillus.
The board of inspectors in this district, upon canvassing the judiciary box, found two Assembly .ballots, which were said to be for Mr. Cook. The two votes were placed under a lamp, with the understanding that they were to be counted for Mr. Cook. The Assembly box was then opened, and the votes counted unopened, and ageed with the poll list. The evidence of two of the inspectors and clerks do not show whether the two votes under the lamp were counted, in order to make the unopened ballots agree with the poll list. Mr. Nott, one of the inspectors, swears he cannot say whether they were or were not counted for Mr. Cook.
Mr. Tinkham, also an inspector, swears he cannot positively say *312 whether-they were counted with the unopened Assembly votes. Mr. Freeman, one of the clerks, has no recolle.ction of the two votes being counted. Mr. Darling did not know whether they were counted or not. The evidence of Mr. Bhoades, one of the inspectors, is, that he is sure one of the votes under the lamp was counted, and thinks the other was. The evidence of James Monroe is positive, that he saw Mr. Wheeler take the two votes from under the lamp and put them in the pile of unopened ballots, and that they were coivnted with the unopened iallots, making in all two hundred and seventy ballots. Mr. David A. Munroe swears positively that one of the votes under the lamp was counted, and that there were no votes under the lamp when the Assembly votes were counted. The two votes in question were only placed partly under the lamp, in plain view of the board, while they remained there. Upon opening the ballots in the Assembly box two votes for judiciary were found, and placed under the lamp, and afterwards counted. The inspectors returned two hundred and sixty-eight votes for Assembly. The only question which arises, is, were the two votes for Assembly, which were for Mr. Cook, counted ? and upon the evidence your committee do not see any room for doubt. While the evidence on the part of the claimant is uncertain and doubtful, the evidence on the' other side is clear, explicit and positive. There is no room for doubt; the positive evidence of a witness of high-character, holding the office of .sheriff of the county, cannot be overcome by the negative testimony of several members of the board, who do not pretend to have any recollection or knowledge as to whether the votes were or were not counted.
In the judgment of your committee there is no evidence showing the two votes were not counted; and it is impossible to resist the positive evidence which must, and should, control, the decision of the committee.
But even should there be a doubt,, the fact that the three inspectors and the clerks, with one exception, were attached to the same political organization with the claimant, and that the returns were all made out and signed, and returned, and declared by Mr. Wheeler, who had the principal charge of the figuring and final drawing of the returns, to be right, and who does not pretend to have any recollection as to whether the two votes were or were not counted, is most convincing evidence that the result given by the inspectors was not erroneous. Your committee have thus reviewed the testimony bearing upon the canvass in the third election district, in which the *313 claimant alleges error, and they submit their report with entire confidence that the facts do not warrant a report for the claimant.
Under the Constitution the House is the judge of the elections, returns, and qualifications of its own members; but the judgment of the House should be that calm and deliberate judgment which only disfranchises the sitting member when there is a clear and palpable error which cannot be overlooked. "We submit our report to the judgment of 'the House, with entire confidence that justice will prevail.
ROBT. F. AUSTIN.
JOHN MATHER,.
Assembly Documents, 1858, No. JO.